UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

*****************************************************************************
| | * | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 03-40081 |
| | * | |
| Plaintiff, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| RUBEN VEGA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

*****************************************************************************

Ruben Vega ("Vega") filed a pro se motion for compassionate release pursuant to the First Step Act. (Doc. 152.) The Assistant Federal Public Defender (FPD) appointed to represent individuals who file pro se pleadings seeking relief under the First Step Act submitted a supplement in support of Vega's motion for compassionate release. (Doc. 156.) The government opposes the motion. (Doc. 158.) A reply was submitted by the FPD. (Doc. 159.) For the following reasons the motion is denied.

## BACKGROUND

On October 31, 2003, Vega entered a plea of guilty to the offense of conspiracy to possess with intent to distribute and to distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(l) and 846. A few weeks prior to the plea, the government filed a notice of its intent to seek increased punishment, pursuant to 21 U.S.C. § 85l(a), based on Vega's prior conviction for a felony drug offense. Because Vega had a prior felony drug conviction, the mandatory minimum for his offense increased from 10 to 20 years, and the maximum penalty was life imprisonment. *See* 21 U.S.C. § 841(b)(l)(A) (2003).

The base offense level under the Sentencing Guidelines was 34 based upon the drug quantity. A two-level enhancement for being an organizer, leader, manager or supervisor in any criminal activity was applied pursuant to USSG § 3B1.l(c), resulting in an offense level of 36. The drug

quantity calculation and the role in the offense, however, were overridden by the career offender provisions in the Guidelines. Specifically, Vega's base offense level of 36 was adjusted upward to 37 under U.S.S.G. § 4Bl.1 based on Vega's status as a career offender for two prior felony drug offenses.[1] The offense level was decreased by three levels for Vega's acceptance of responsibility. Thus, the total offense level was 34, with a criminal history category VI, resulting in a mandatory sentencing range of 262 to 327 months' imprisonment. At the time of Vega's sentencing on January 26, 2004, the Federal Sentencing Guidelines were mandatory. There was no basis for a departure. This Court sentenced Vega to serve 262 months' imprisonment, a sentence that was at the bottom of the guideline range but still within the 20-year mandatory minimum sentence. (Doc. 87.) The Court imposed 10 years of supervised release. (*Id*.) Vega did not appeal his sentence.

On November 1, 2004, Vega filed a Motion to Vacate, Set Aside or Correct sentence pursuant to 28 U.S.C. § 2255. (*See* Civ. 04-4174, Doc. 1.) Vega argued that the Court lacked jurisdiction to impose a sentence higher than the 20-year mandatory minimum under 21 U.S.C. § 841(b)(l)(A). Rejecting this argument, this Court noted that Vega admitted in the Amended Factual Basis Statement that he signed that the conspiracy "result[ed] in the distribution of over 500 grams of methamphetamine." (*See* Civ. 04-4174, Doc. 13.) In *Blakely*, the Supreme Court made clear that the statutory maximum for *Apprendi* purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis added). Pursuant to 21 U.S.C. § 841(b)(l)(A), the maximum punishment was life imprisonment for over 500 grams of a mixture and substance containing methamphetamine. Thus, Vega was not entitled to relief under *Apprendi*, because his sentence did not exceed the statutory maximum applicable to the criminal conduct he admitted in the Amended Factual Basis Statement. (*See* Civ. 04-4174, Doc. 13.) Vega's arguments that he received ineffective assistance of counsel in the underlying proceedings were also rejected. (*Id*.)

Subsequently, the Sentencing Commission adopted Amendment 782 which became effective November 1, 2014, and was made retroactive effective November 1, 2015. *See United States v.*

---

[1] Because the statutory maximum for Vega's conviction was life imprisonment, his status as a career offender resulted in an offense level of 37 and a criminal history category of VI.

*Lawin*, 779 F.3d 780, 781 n.2 (8th Cir. 2015). Essentially, Amendment 782 "applies retroactively to reduce most drug quantity base offense levels by two levels." *Id.* (citing *United States v. Thomas*, 775 F.3d 982 (8th Cir. 2014)).

On April 17, 2015, Vega filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the retroactively-amended drug quantity base offense levels. (Doc. 133.) In his § 3582(c)(2) motion, Vega argued that Amendment 782 should be applied to reduce his offense level by two levels, from 34 to 32, resulting in a guideline range of 210 to 262 months rather than 262 to 327 months of imprisonment. This Court determined that Vega was ineligible for a sentence reduction under § 3582(c)(2) and denied his motion. (Doc. 137.) The Court reasoned that *United States v. Thomas*, 775 F.3d 982 (8th Cir. 2014) (per curiam), barred a sentence reduction for Vega because his applicable guideline range was based on the career-offender table in U.S.S.G. § 4Bl.l(b) and not the offense levels listed in USSG § 2Dl.1 for drug quantity, and thus the new guidelines did not alter the career offender range. In *Thomas*, the Eighth Circuit construed the applicable guideline and policy statements and held that when a defendant is found to be a career offender and is sentenced under § 4B1.1, the applicable guideline range under § 3582(c)(2) is his career-offender range and Amendment 782 does not lower that guideline range. Applying that reasoning to Vega, even if he were resentenced with the newer guidelines, his applicable guideline range would be the same: 262 to 327 months. Because Amendment 782 did not have the effect of lowering Vega's applicable guideline range, a reduction in his term of imprisonment was not authorized and his motion pursuant to 18 U.S.C. § 3582(c)(2) was denied. (Doc. 137.)

On May 31, 2016, Vega filed another pro se motion to reduce his sentence, arguing he should have received a lesser sentence because his two prior felony convictions were not serious enough to justify his career offender status, and he should not have received the two-level increase for being an organizer or leader. (Doc. 143.) Vega said he had been rehabilitated, and was ready to re-enter society. (*Id.*) Denying the motion, the Court explained it had no authority to reduce Vega's term of imprisonment. (Doc. 149.) The Court noted that, at the time of Vega's sentencing on January 26, 2004, the Federal Sentencing Guidelines were mandatory; if the sentencing guidelines had not been mandatory at that time, the Court could have considered a variance to no lower than the 240 month mandatory minimum. (*Id.*)

Vega is currently incarcerated at the correctional institution in Anthony, Texas (FCI La Tuna). He has served over 16 years of his sentence. His projected release date is January 3, 2022. Vega is 41 years old. The supplemental briefs subsequently filed by the FPD explain that Vega suffers from a number of medical problems, including obesity, prediabetes, low back pain, and plantar fascial fibromatosis. (Doc. 156.) Vega argues that being incarcerated makes him particularly vulnerable to COVID-19. In support of this argument, he cites and attaches declarations from medical professionals discussing the risks of being incarcerated during the pandemic.[2] To avoid this increased risk of contracting COVID-19 and developing serious complications, Vega asks the Court to reduce his sentence to time served and order his immediate release.

The Court checked the BOP website on November 2, 2020, and at that time one inmate and seventeen staff members at FCI La Tuna were positive for COVID-19, and eight staff members and 21 inmates had recovered. According to the BOP website as of November 25, 2020, 117 inmates and 33 staff members are known to be currently positive for COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. One inmate there has died of COVID-19. (*Id.*) The number of those "recovered" from the virus has increased to 159 inmates and eight staff members. (*Id.*)

## DISCUSSION

Title 18, § 3582(c)(1)(A)(i), known as the "compassionate release provision" of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a

---

[2] *See* Declaration of Dr. Chris Beyrer, Director of the Center for Public Health and Human Rights and Johns Hopkins (Doc. 156-1, "Beyrer Decl."); Declaration of Dr. Jonathan Golob, Assistant Professor at University of Michigan School of Medicine (Doc. 156-2, "Golob Decl."); Declaration. of Dr. Jaimie Meyer, Assistant Professor at Yale School of Medicine (Doc. 156-3, "Meyer Decl.").

>  reduction is consistent with applicable policy statements issued by the Sentencing Commission.[3]

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to passage of the First Step Act, compassionate release requests came to the Court "upon motion of the Director of the Bureau of Prisons." *United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020). Now, a defendant may bring his or her own motion with the Court if administrative remedies have been exhausted. *Id.* at 744.

## I. Administrative Exhaustion

A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That requirement is satisfied here. On July 2, 2020, Vega submitted a request for compassionate release to the warden at FCI La Tuna. It does not appear the warden responded. Vega submitted another request for compassionate release to the warden on August 4, 2020, which was rejected on August 12, 2020. As more than thirty days have elapsed from the date that Vega submitted his requests to the warden, the Court has jurisdiction to consider the motion. *See United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request); *United States v. Harris*, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (reversing district court's dismissal for failure to exhaust after government conceded that defendant was not required to completely exhaust the administrative remedy process after warden denied his compassionate release request).

## II. Extraordinary and Compelling Reasons

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent with applicable policy statements" issued by the United States Sentencing Commission. 18 U.S.C.

---

[3] 18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Vega is 41 years old. He would need to be at least 70 years old to qualify for compassionate release consideration under Section (ii).

§ 3582(c)(1)(A). Congress did not define what constitutes "extraordinary and compelling reasons." Congress elsewhere required the Commission to issue a policy statement "regarding . . . the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t).  Since the passage of the First Step Act, the Sentencing Commission has not yet updated its policy statements related to compassionate release, and the Sentencing Commission has not clarified what "extraordinary and compelling might mean," under the First Step Act.[4]  *Rodd*, 966 F.3d at 746.  Thus, the Commission's Guidelines, formulated before the First Step Act was passed and well before the COVID-19 pandemic, still address motions for compassionate release being considered by the BOP Director.  Those Sentencing Guidelines provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment "if, after considering the factors set forth in 18 U.S.C. 3553(a)," the district court determines that –

  (1)
   (A) extraordinary and compelling reasons warrant the reduction; or

   (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

  (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

  (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

As noted by the Eighth Circuit in *Rodd*, 966 F.3d at 746–47, the commentary to § 1B1.13 identifies four categories that constitute "extraordinary and compelling reasons warrant[ing] the [sentence] reduction," as that term appears in U.S.S.G. § 1B1.13(1)(A):

---

[4]  In *Rodd*, the Eighth Circuit observed that since the Sentencing Commission lacks a quorum to amend the Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to compassionate release motions brought by defendants in the near future. *Rodd*, 966 F.3d at 746 n.7 (citing *United States v. Beck*, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)).

(A) <u>Medical Condition of the Defendant</u>.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis. of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—
   (I) suffering from a serious physical or medical condition,
   (II) suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from Which he or she is not expected to recover.

(B) <u>Age of the Defendant</u>.  The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) <u>Family Circumstances</u>.
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) <u>Other Reasons</u>.  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1(A)-(D).

The Eighth Circuit has declined to address whether district courts are bound by the Sentencing Commission's examples in this policy statement when considering a prisoner's compassionate release motion under the First Step Act. In *Rodd*, the Eighth Circuit noted that "[w]hile some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and

7

compelling reasons." *Rodd*, 966 F.3d at 745.  The Court said it wasn't necessary to decide whether or not U.S.S.G. § 1B1.13 applies because the district court had assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons making him eligible for compassionate release under U.S.S.G. § 1B1.13, and still denied his motion after considering the § 3553(a) sentencing factors.  *Id.* at 747–48.

In *United States v. Brown*, 411 F.Supp.3d 446 (S.D. Iowa 2019), the district court judge, Judge Robert Pratt, explained how some district courts have concluded they should rely only on the Sentencing Commission's pre-First Step Act guidelines regarding compassionate release, while other district courts also look to the BOP Program Statement written for the old law, and will only grant a motion for compassionate release under the same circumstances as the BOP would have prior to the First Step Act.  *Id.* at 450.  Judge Pratt described why it is his opinion that Congress intended to increase the use of compassionate release, and by amending § 3582 to allow defendants to motion district courts directly for compassionate release even after the BOP denies their petition, Congress intended to give district judges more discretion "to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* at 451.

In this district, Judge Lange also has held that district courts are not limited by circumstances described in U.S.S.G. § 1B1.13, even if it applies to motions for compassionate release brought under the First Step Act.  *See United States v. Dillabaugh*, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (holding that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described").

The Second Circuit is the only circuit that has addressed the issue.  That court recently ruled that compassionate release motions brought by prisoners pursuant to the First Step Act are not limited by the guidance in U.S.S.G. § 1B1.13.  *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020).  After stating all of the reasons for its conclusion, including the history and text of the First Step Act and Guideline § 1B1.13, the Second Circuit stated:

> For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D),

>nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*Brooker*, 976 F.3d at 237.

This Court agrees with the reasoning of Judge Pratt, Judge Lange and the Second Circuit, and holds that a district court may use its discretion when it is considering the "extraordinary and compelling reasons" for a compassionate release. With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance. *See Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release).

Vega first argues that his health conditions and incarceration during the COVID-19 pandemic are "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13, Application Note 1(D). Compassionate release may be appropriate under subsection (D) where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, application note 1(D). This final provision is often called the "catch-all" provision. In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id*. But now that the First Step Act allows inmates to move the Court for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. Judge Schreier recently noted that "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020.) In *Morehouse*, Judge Schreier considered the defendant's argument that his circumstances warranted relief under this "catch-all" provision in application note 1(D) because "his medical conditions put him at high-risk if he contracts COVID-19." *Id*. Finding that the defendant's medical conditions were being controlled and that the BOP's response to the pandemic at the Yankton FPC was adequate,[5] Judge Schreier held

---

[5] When Judge Schreier issued her opinion, there had been no positive COVID-19 cases at the Yankton FPC. *Morehouse*, 2020 WL 2836188, at *2.

that the defendant's circumstances did not warrant a sentence reduction under U.S.S.G. § 1B1.13, application note 1(D). *Id.* at *3-4

Judge Lange has also considered whether health issues, combined with the COVID-19 pandemic generally, constitute extraordinary and compelling reasons for compassionate release under the "catch-all" phrase in U.S.S.G. § 1B1.13, application note 1(D). He observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

*United States v. Frost*, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Adopting this reasoning, this Court concludes that it has discretion to consider whether Vega's health conditions and being imprisoned during the COVID-19 pandemic present an extraordinary and compelling basis for a sentence reduction. *See also Brooker*, 976 F.3d at 238 (noting that district courts around the country have used the coronavirus pandemic "as a justification for granting some sentence reduction motions").

According to the CDC, people with the following health conditions are at "increased risk for severe illness from COVID-19": cancer, chronic kidney disease, COPD, heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), severe obesity (BMI over 40), pregnancy, sickle cell disease, smoking, and Type 2 diabetes. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed November 17, 2020). The CDC also provided a list of medical conditions that "might" put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state (from blood or bone marrow transplant, immune

deficiencies, HIV, use of corticosteroids or other immune weakening medicines), neurologic conditions, such as dementia, liver disease, overweight (BMI over 25 but less than 30), Thalassemia (a type of blood disorder), and Type 1 diabetes. *Id.* The CDC has also stated that the risk for severe illness increases with age. *Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated September 11, 2020 and last reviewed November 17, 2020). "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older." *Id.* "The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

The government argues that Vega has failed to prove he is obese because the BOP records do not list obesity as a medical diagnosis, and his BMI is listed at 29.0-29.9 throughout the BOP records based on his weight in 2016. There is evidence that Vega might be slightly obese based on the most recent weight of 201 pounds on January 14, 2020. (Doc. 158, p. 6.) There is also some showing that Vega is at an "increased risk" of diabetes because his most recent A1C (blood glucose level) lab result was 5.7. (Doc. 154, pp. 289, 386, 451.) But Vega does not have diabetes and prediabetes is not listed by the CDC as a condition that might increase an individual's risk of severe illness from COVID-19. There is no showing that Vega's fluctuating high blood pressure readings increase his risk of complications. At only 41 years old Vega is not of an age that makes him more vulnerable to COVID-19.[6] The Court concludes that Vega's possible slight obesity, prediabetes and fluctuating blood pressure readings do not reach the level of demonstrating "extraordinary and compelling" reasons to warrant a sentence reduction under § 3582(c)(1)(A).

Congress has stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Sentencing Commission recognizes that rehabilitation cannot be the sole factor for compassionate release. *See* U.S.S.G. § 1B1.13 cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary

---

[6] Though Vega's medical records reflect that he was hospitalized for Rhabdomyolisis in 2015, and that it is a serious medical condition that may cause kidney failure, there is no showing that this would effect Vega if he contracted COVID-19. (Doc. 154 at pp. 162-63, 215-16.) The CDC does not recognize Rhabdomyolisis as a risk factor for serious illness from COVID-19. The Court has no information that would allow it to consider Vega's bout with Rhabdomyolisis as a risk factor during the pandemic.

and compelling reason for purposes of this policy statement."). Because Vega has not stated any other reason for compassionate release that is extraordinary and compelling, his rehabilitation is not a reason to grant his motion for compassionate release, and the Court does not need to consider the 18 U.S.C. § 3553(a) factors.

## CONCLUSION

The Court finds that extraordinary and compelling circumstances do not exist. Accordingly,

**IT IS ORDERED** that defendant Ruben Vega's Motion for Compassionate Release is denied. (Doc. 152.)

Dated this 11th day of December, 2020.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

_____